## McCORMICK v. JOYCE.

The decree on the petition of a resigning guardian, of a balance being due by the minor
ward, is not evidence to support an action by the guardian against the ward.

IN error from the Common Pleas of Bucks.

*Dec.* 28. Assumpsit by McCormick, executor of Boyd, who was
the guardian of Joyce, to recover the balance found due to the
guardian, on settlement of his accounts in the Orphans' Court.

In 1837, Joyce being a minor above the age of fourteen, Boyd
applied to the Orphans' Court to have a settlement of his accounts,
and be discharged from the guardianship. In this settlement, of
which notice had been given to the ward, the credits claimed were
for interest paid on a mortgage; repairs to buildings on the pro-
perty of the ward; expenses and commissions. There were no
claims for money advanced for maintenance or education. This
account had been confirmed, and upon the trial of this action it
was offered in evidence to show a balance due by the ward, but re-
jected by the court.

*W. A. Porter* and *Dubois*, for plaintiff in error, contended that
under the act of 1832, the court had the power to determine accounts
between guardian and ward. That by that act all decrees of that
court were like judgments of a court of record, which was held to
be the case in executor's accounts, and that, at all events, having
been passed upon by the court, it was sufficiently *primâ facie* evi-
dence to go to a jury.

*Chapman*, contrà, contended there could be no decree binding
the infant ward personally; Richards's Case, 6 Serg. & Rawle,
462.

*Jan.* 10. BELL, J.—The sole question raised upon this record, is
whether the account settled by the plaintiff's testator, as guardian
of the defendant, during the minority of his ward, was competent
evidence to establish, even *primâ facie*, the alleged indebtedness
of the ward to the guardian, for and on account of payments made
by the latter beyond the trust-fund which came into his hands. It
is supposed to be evidence for this purpose, because it received the
sanction of the Orphans' Court, by its order of confirmation of the
15th of February, 1837, which, as it is said, is in the nature of a
decree binding all parties. But it was ~~not~~ settled so long ago as

the year 1821, in Richards's Case, 6 Serg. & Rawle, 462, that the
Orphans' Court have no power to decree a balance against a ward
in favour of his guardian, even after the former had attained full
age. " The guardian," says the Chief Justice, in delivering the
opinion of the court, "is to account with the ward, and not the
ward with the guardian. He is to account for the administration
of the funds that come to his hands, and when he has done that,
the court will discharge him; but that is the extent of the power
which can be exercised for the protection only of the rights of the
ward; the rights of the guardian are to be enforced by another tri-
bunal,"—and he goes on to show, upon sufficient reasons, that if, in
settling the account of disbursements made by the guardian, a ba-
lance should be ascertained against the ward, it will have no ope-
ration but to show that the guardian had discharged himself by an
honest application of the fund. It was upon the authority of this
case the court below ruled the present, and it is admitted the prin-
ciple ascertained and settled by it, justified the decision, unless,
indeed, the law has been changed in this particular by more recent
statutes, regulating proceedings in the Orphans' Court. It is sup-
posed the tenth and eleventh sections of the act of 29th March,
1832, have had this effect. Both of them are, substantially, taken
from the act of 30th March, 1821, which was enacted prior to the
decision in Richards's Case. But it may be, the account of the
guardian, there, was settled before the passage of the act of 1821,
and it might, therefore, have been thought inapplicable, though it
would seem strange it was not adverted to by way of illustration,
if the court supposed it worked an alteration in the before-existing
rule. But waiving this, let us inquire whether the provisions of
the act of 1832, just adverted to, have produced the result attri-
buted to them by the plaintiff in error. The first-mentioned of
these sections relates altogether to the triennial accounts to be set-
tled by guardians in the office of the clerk of the Orphans' Court,
for the information of the court and the inspection of all parties
concerned, but which conclude no one, and the final account to be
settled on the arrival of the ward at full age, in the register's office,
upon which the decree of the Orphans' Court, in the language of
the act, "shall, like other decrees of the court, be conclusive upon
all parties, unless reversed, modified, or altered on appeal." Whe-
ther a decree upon such a final account, ascertaining a balance to be
due from the ward to the guardian, would conclude the ward as to
such balance, unless modified on appeal, it is not necessary to de-
termine, for the present litigation is not based on a final account

of that nature. The settlement we have to deal with was made under and by virtue of the eleventh section of the act. This enacts that "the Orphans' Court shall have power, upon the petition of any such guardian, to discharge him from the duties of his appointment: *Provided,* That no guardian shall be discharged from his liability for the estate of his ward, until he shall have rendered to the court an account of the management of his trust; nor until the same shall have been submitted to competent persons as auditors, and their report thereof be confirmed by the court, unless such account shall have been examined by the said court, and the appointment of auditors be found necessary, (meaning unnecessary;) nor until such guardian shall have surrendered the residue of the estate standing upon his account, settled and confirmed, as aforesaid, to a subsequent guardian of such ward, or to such other person as the court shall appoint to receive such estate: *And provided further,* That in any such case, it shall be the duty of the court to appoint some suitable person to appear and act for the ward, in respect to the settlement of such account." Now, it is impossible to look at this section without perceiving that it was framed for the protection of the infant ward, and not to advance the interest of the withdrawing guardian, by enabling him to ascertain, by matter of record, a debt due to him from the minor. What is there in it to justify the conclusion that the legislature intended to change the law in instances like the present? We see nothing. On the contrary, it is, I think, manifest from the whole tenor of this part of the enactment, the law-makers contemplated only accounts settled, to ascertain the due management of the trust-fund, and not a settlement made during the minority of the ward, which might, ultimately, fix him as a debtor. For this purpose, the statute directs the appointment of auditors to examine the account, or, in lieu thereof, an examination by the court; it prohibits the discharge of the guardian until he shall have surrendered *the residue of the estate standing upon his account, settled and confirmed,* and it provides for the appointment of some suitable person to act for the ward in respect to the settlement. It may be observed, too, in passing, that it lacks the emphatic concluding of the preceding section, respecting the conclusiveness of the decree. And there is reason for this. In a large majority of instances, the infant ward would be utterly incapable of investigating the account and verifying its correctness, and though the law provides for the appointment of a next friend to look to the interests of the ward, every one who has had any experience upon this subject will recognise the difficulty of pro-

curing an individual to undertake this office, on whose vigilance and faithfulness full reliance may be placed. In this case, even this imperfect precaution was neglected—as it never ought to be—and though it is said the court may have examined the account, we know that in fact this is seldom done, unless attention be specially called to it, for the reason that, for the most part, such an examination would be nugatory.

In conclusion, it may be observed the argument of the plaintiff in error, which seeks to establish the account as evidence of the ward's indebtedness, proves too much. He claims for the proffered evidence but a *primâ facie* effect, but if it be competent at all for the purpose for which it was here attempted to be used, it is conclusive upon the ward. The position is, that the character of record proof is conferred upon it by the decree of the Orphans' Court. If so, then both by virtue of prior adjudications, and the provision of the act of 1832 itself, its correctness cannot be inquired into in this action, for the proceedings and decree of the Orphans' Court, "*in all matters within its jurisdiction*, shall not be reversed or avoided collaterally in any other court." But to this extreme the plaintiff himself refused to go, and yet his argument, carried out, pushes him upon it. To avoid such an objectionable conclusion, we must hold, as was held in Richards's Case, that it is not within the jurisdiction of the Orphans' Court to decree a sum of money to be due from the ward to his guardian. This will leave the parties to stand upon their common-law remedies in respect to such imputed debt. That the guardian may suffer some inconvenience from this, is perhaps true, but it is better so than that the ward should be fixed by the statement of the guardian, or even be subjected to the *onus* of disproving the items of charge set up by the guardian, perhaps involving complicated transactions of which the ward has little or no knowledge.

Judgment affirmed.